1　STEPHANIE ANN CHITWOOD
　　244 Oberlin Drive
2　Galt, CA 95632
　　916-741-6319
3　stephanie.dean94@gmail.com

4
　　STEPHANIE ANN CHITWOOD, IN PRO PER
5

6

7

8　　　　　　　　　　UNITED STATES BANKRUPTCY COURT

9　　　　　　　　　　　EASTERN DISTRICT OF CALIFORNIA

10　　　　　　　　　　　　　SACRAMENTO DIVISION

11
　　IN RE:　　　　　　　　　　　　　　) Case No.: 24-23447-A-13C
12　　　　　　　　　　　　　　　　　　　) DCN: DPC-2
　　　　　　　　　　　　　　　　　　　　)
13　　　　　　　　　　　　　　　　　　　) **OPPOSITION TO MOTION TO DISMISS**
　　STEPHANIE ANN CHITWOOD,　　　　　　) **OR CONVERT CHAPTER 13 CASE**
14　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
15　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　) **DATE: April 15, 2025**
16　　　　　　　　　　　　　　　　　　　) **TIME: 9:00 AM**
　　Debtor　　　　　　　　　　　　　　　) **DEPT: 28, 7th Floor**
17　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　) Judge: CLEMENT
18　　　　　　　　　　　　　　　　　　　) Dept: 28, 7th Floor
　　　　　　　　　　　　　　　　　　　　) Action Filed: March 31, 2025
19　　　　　　　　　　　　　　　　　　　) Trial Date: April 15, 2025
　　　　　　　　　　　　　　　　　　　　)
20
　　I, Stephanie Chitwood, respectfully submit the following arguments and evidence in support of
21
　　maintaining my Chapter 13 bankruptcy case and file the opposition to dismiss or convert this case
22
　　to Chapter 7.
23

24
　　**Introduction:**
25

26
　　The movant seeks to either dismiss my case or convert it to Chapter 7. However, such action would
27
　　be unjust as it fails to account for significant pending issues, particularly addressing the fraudulent
28

- 1 -

OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

actions that have occurred and the failure of M&T bank to uphold the terms of the FHA 203k loan. The bank's actions have directly impeded the ability to complete the contract and protect the property and the investment as a homeowner and my primary residence. M&T Bank has directly failed at their fiduciary duty and has ignored all good faith payments and actions made toward keeping the contract since 2018.

**FRAUDULENT ACTIONS OF M&T BANK AND FAILURE TO UPHOLD FIDUCIARY DUTY**

**Failure to uphold the contract:** According to the FHA 203k contract, they acted in bad faith to provide a valid occupancy permit and ensure completion and investigation of fraud by the HUD consultant and contractor. They intentionally withheld available funds instead of holding them for an approved replacement contractor or releasing them for use. Contingency funds cannot be distributed back to the loan unless they are not needed and are held for unforeseen health and safety issues that arise during construction. The house was incomplete and uninhabitable for four years (i.e.- walls completely open to the elements and there was no bathroom as it had been unauthorized to demo by the contractor). The property remained uninhabitable due to their misapplying funds to the loan and refusal to complete the construction per the contract terms. Yet I have been required to live in these conditions even today as this has been the refusal for any previous loan modification. The FHA requirement for living in a property as your primary residence is 1 year according to my contract.

The HUD consultant falsified and forged my name on inspection paperwork claiming work was completed that was not. The HUD consultant threatened to take my property back if I failed to pay and go along with their extortion plan that was not according to the contract. The CA State Contractors Licensing Board did an investigation into the work as requested by myself. While waiting for this investigation M&T Bank failed to report to the appropriate authorities for fraud of Federal funds such as to HUD and local authorities. They willfully neglected investigation with no

OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

intention to complete their contract to bring the property up to FHA standards by misapplying the remaining construction funds back to the principal of the loan along with the contingency funds that were meant for unforeseen health and safety issues such as missing walls, missing roof and no toilet. (See attached evidence to support claims including emails, draw requests, claims relating to construction and negotiating with Yuba County to allow me to temporarily stay in my RV Trailer during construction.)

**Pending legal action or claims**: I have raised significant legal objections and claims as the homeowner against M&T Bank and asked for answers into the disappearance and destruction of my property without any legal notice. M&T Bank has acknowledged in phone call recordings that all mail has been returned as not delivered, thereby not giving any legal notice to any actions taken by M&T Bank or Yuba County in accordance with multiple Federal and CA State laws. M&T Bank has left voicemails detailing that they were not aware of any demolition done by Yuba County until months after and with no reasons for their actions. *(SEE REPORTING REQUIREMENTS BELOW)*

**FEDERAL REPORTING REQUIREMENTS**

**I. Mandatory Disclosures**: Under 2 C.F.R. § 200.113 recipients of federal funds (including banks servicing FHA loans) must promptly disclose credible evidence of fraud, waste, or abuse to the U.S. Department of Housing and Urban Development (HUD) or its Office of Inspector General (OIG). If they have credible evidence of violations of federal criminal law, such as fraud or bribery, it could affect the federal award.

**II. The False Claims Act**: Under 31 U.S.C. §§ 3729-3733 imposes liability on entities that knowingly fail to report fraud.

**HUD Reporting Requirements**

    I.    Servicers are obligated to report fraud involving FHA loans to HUD's Office of Inspector General (OIG). This includes cases where contractors misuse funds or fail to fulfill their contractual obligations. According to HUD

regulations, servicers must disclose credible evidence of fraud, waste, or abuse related to federal funds as the HUD Handbook 4910.1 sets forth minimum requirements.

**I. HUD Technical Review:** Those complaints which cannot be resolved by the Complaint Officer shall be forwarded to the Architectural and Engineering Branch for necessary action. Such complaints would include but are not limited to: Builder disclaims any or partial responsibility for items of complaint; homeowner is dissatisfied with corrective action; and Congressional inquiries. *(Ref. HUD Chapter 1 Complaint Instructions PDF; sec 1-9.)*

**II. Default servicing:** Pre-foreclosure sale mitigation: Hazard Insurance Claim Where applicable, the Mortgagee must work with the Borrower to file a hazard insurance claim and either:
• use the proceeds to repair the Property; or
• adjust the PFS Claim by the amount of the insurance settlement (Non Surchargeable Damage) or the Government's Repair Cost Estimate

    I.  **Hazard or Flood Insurance Settlement:** The Mortgagee must take no action to initiate or complete foreclosure proceedings, after expiration of a disaster-related foreclosure moratorium, if such action will jeopardize the full recovery of a hazard or flood insurance settlement.

    II.  **Monitoring of Repairs to Substantially Damaged Homes:** A building is considered to be "Substantially Damaged," as defined in the National Flood Insurance Program (NFIP) regulations, when "damage of any origin is sustained by a structure whereby the cost of restoring the structure to its before damaged condition would equal or exceed 50 percent of the market value of the structure before the damage occurred." The Mortgagee must take appropriate actions to ensure that repairs to Substantially Damaged Properties comply with

- 4 -
OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

the federal building elevation standards. The Mortgagee must ensure compliance with any higher applicable building elevation standard adopted by the state or local government.

    a. Loss Mitigation for Borrowers in PDMDAs Should Presidentially-Declared Major Disasters adversely impact a Borrower's ability to make on-time Mortgage Payments, the Mortgagee must provide the Borrower with forbearance and HUD loss mitigation assistance, where appropriate, as provided in applicable FHA policy guidance. Borrowers Impacted by a PDMDA and COVID-19 For Borrowers impacted by a PDMDA during the COVID-19 pandemic: • For Borrowers who are already on a COVID-19 Loss Mitigation Option, including a COVID-19 Forbearance, before the date of a new PDMDA disaster declaration, the Mortgagee must continue to follow the COVID-19 Loss Mitigation guidance. • For all other Borrowers, the Mortgagee must evaluate the Borrower for all Loss Mitigation Options available to them, including any PDMDA or COVID-19 Loss Mitigation Options, based on their reason for hardship. For any buildings in a PDMDA that are substantially damaged, Mortgagees must follow the PDMDA guidance in Monitoring of Repairs to Substantially Damaged Homes. This requirement applies to all Properties covered by a non-COVID-19 PDMDA during the COVID-19 pandemic, including those already under a COVID19 Loss Mitigation Option, such as COVID-19 Forbearance.

    b. PDMDA Loss Mitigation Owner-Occupant Requirement: The Mortgagees must not deny a Borrower any Loss Mitigation

Option solely for failure to occupy a mortgaged Property if the following conditions are met:

- the mortgaged Property is located within a PDMDA;
- the dwelling was the Principal Residence of a Borrower immediately prior to the disaster event;
- a Borrower intends to re-occupy the mortgaged Property upon restoration of the home to habitable condition; and
- the total accumulated mortgage arrearages have not exceeded the equivalent of 12 months

III. **Flood Insurance for Properties located within a Special Flood Hazard Area (SFHA):** the Mortgagee must ensure that insurance is in force for the life of the Mortgage or so long as such coverage remains available, unless the area in which the Property is located is no longer designated as an SFHA. If, due to rezoning, a property securing an FHA-insured Mortgage becomes located in an SFHA, the Mortgagee must enforce HUD's flood insurance requirements on coverage amounts and maintenance.

IV. **Hazard or Flood Insurance Proceeds Insurance Claims:** The Mortgagee must take necessary steps to ensure that hazard or flood insurance claims are filed and settled as expeditiously as possible.

V. **Loss Settlement Amounts for Borrower Expenses and Personal Property:** The Mortgagee must promptly release to the Borrower all insurance settlement proceeds received for coverage of a Borrower's Personal Property, temporary housing, and other transition expenses. The Mortgagee may not withhold Disbursement of such proceeds to cover an existing arrearage without the written consent of the Borrower.

OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

VI.  **Insurance Proceeds for Home Damage:** A Viable Repair Plan is a plan for repairs of a mortgaged Property within the amounts available through insurance proceeds and borrower funds. The Mortgagee must expedite the release of insurance proceeds for needed home repairs after approving a Viable Repair Plan.

VII. **Application of Insurance Proceeds to Unpaid Principal Balance:** The Mortgagee may only apply insurance proceeds payable for home damages to arrearages and/or reduction of the unpaid principal balance if the amount of the proceeds exceeds the costs to repair the damages to the home; or the insurance proceeds are insufficient to repair the home damages based on a certified repair estimate, and the Borrower is unable to demonstrate that they have additional funds from other sources to complete the repairs.

**CA STATE FRAUD REQUIREMENTS**

In California, banks and financial institutions are required to report fraud, including those involving federal funds like FHA loans.

**I. California Financial Code § 800-864:** This section outlines the responsibilities of financial institutions, including compliance with federal regulations and reporting obligations.

**II. California Welfare and Institutions Code § 15630.1:** This law also requires financial institutions to report suspected financial abuse to local law enforcement. It demonstrates California's emphasis on mandatory reporting by financial institutions.

Any due process as established in the United States Constitution's 14th amendment has been completely disregarded for any rights to contest any actions taken against the property. With no legal notices on any civil action this is in direct violation of the 1964 Civil Rights Act amongst additional provisions listed below. Dismissing or converting this case would further damage the

- 7 -
OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

financial status and evade accountability for fraud damages and negligence for the fiduciary duty required by mortgage lenders.

**EXTREME PREJUDICE TO DEBTOR IF DISMISSED**

If dismissed or converted this would make me suffer undue hardship and the potential for resolving and getting answers to the disputes with M&T Bank and the county while within the bankruptcy process and interfere with federal rights entitled to every homeowner.

All loan modifications/settlements as presented to myself were highly prejudicial from M&T Bank and not within Federal Regulations as well as through the Supreme Court decision regarding the standard that equity cannot be taken in a modification or bankruptcy/foreclosure process.

**CASE LAW SUPPORTING PREJUDICE TO DEBTOR**

A similar case also happened in Yuba County, Ca involving a bank and allegations of wrongful foreclosure. In **Linza v. PHH Mortgage Corporation (2014)**, the case centered on claims that the bank engaged in deceptive practices, including mishandling loan modifications and foreclosure proceedings, which initially would have led to the homeowner losing equity in their property. This case however reinforced the application of existing laws, such as California's **Homeowner Bill of Rights (HBOR)**, the **Truth in Lending Act (TILA)** and the **Real Estate Settlement Procedures Act (RESPA)** and gave back and protected this homeowner's equity rights.

**Bailey Tool & Mfg. Co. v. Republic Business Credit (In re Bailey Tool & Mfg. Co.)**
The actions of M&T Bank bear similarity to those scrutinized in *Bailey Tool & Mfg. Co. v. Republic Business Credit (In re Bailey Tool & Mfg. Co.)*. In this case, the lender was found liable for breach of contract, fraud, and inequitable conduct due to its failure to act in good faith and its willful neglect of contractual obligations. The court underscored the lender's fiduciary duty to act in the

best interests of the debtor and ruled that violations of this duty could result in severe penalties, including the subordination of the lender's claims.

Like the lender in *Bailey Tool*, M&T Bank has breached its fiduciary duty and the terms of the FHA 203k loan contract by failing to oversee the completion of the construction project and neglecting to address fraudulent activity by the HUD consultant and contractor. Furthermore, M&T Bank misapplied funds, withheld critical resources, and refused to investigate allegations of fraud, thereby impeding the ability of the debtor to protect the property and fulfill their obligations under the loan. Such actions contravene the expectations of good faith and fair dealing established in bankruptcy cases and federal loan programs.

This precedent set by the court in *Bailey Tool* reinforces the need for accountability when lenders engage in inequitable conduct that harms borrowers and their financial standing. The case highlights the responsibilities of lenders to act in good faith and avoid actions that harm borrowers, especially in the context of federal loan programs or bankruptcy proceedings. As in that case, M&T Bank's actions warrant further scrutiny and should not be excused or overlooked through a motion to dismiss or convert the debtor's Chapter 13 case.

**BUSHELL v. JPMORGAN CHASE BANK, N.A.**

The case Bushell v. JPMorgan Chase Bank, N.A. (3rd District Court of Appeal, Case No. C070643) involved allegations of wrongful foreclosure and violations of the Home Affordable Modification Program (HAMP). The plaintiffs, Richard and Susan Bushell, argued that JPMorgan Chase failed to properly evaluate their loan modification application and proceeded with foreclosure despite their compliance with HAMP requirements.

The court's decision emphasized the importance of lenders adhering to HAMP guidelines and ensuring fair treatment of borrowers. This case has been cited as a precedent in similar disputes involving loan modifications and foreclosure practices.

OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

Case 24-23447 Doc 66

**PREVIOUS ACTIONS AGAINST M&T BANK:**

CFPB issued action against M&T Bank on October 9, 2014, the Bureau announced an action against Manufacturers and Traders Trust Company (M&T Bank) for deceptively advertising free checking accounts. The CFPB released a report titled Supervisory Highlights: Fall 2014 on October 28, 2014 that covered examination findings in areas like mortgage servicing, student loan servicing, consumer reporting, debt collection, and deposits.

**CA GOVERNOR DECLARED EMERGENCY ORDER**

In December 2021, California Governor Gavin Newsom declared an Executive Order of Emergency for several counties throughout California due to excessive rain and flooding from unprecedented Winter Storms. With additional damage to the property from failing to properly oversee the use of funds to remediate and complete habitable living conditions along with failing to report to Yuba County Authorities; substantial financial loss and hardships have occurred. This is similar to the case **United States v. Bob Dean Jr. et al. (2023)** that determined Bob Dean Jr and his associates were financially responsible for their misuse of funds that were intended for residents. Their misuse of funds left the residents unprepared for Hurricane Ida and in conditions that were reportedly squalid, leading to intervention by the Louisiana Department of Health. Emergency declarations, like the one issued during Hurricane Ida, often provide additional legal protections or resources for affected individuals. I was awarded none of these provisions as Yuba County failed to recognize the Ca Governor's order nor provide any assistance.

California state law outlines specific requirements for counties during an executive emergency order, including reporting damages. Under the **California Emergency Services Act (CESA)**, counties are responsible for assessing and reporting the extent of damage caused by disasters to the Governor's Office of Emergency Services (Cal OES). This information is used to determine the need for state or federal assistance. If fraud damages failed to be reported before the Emergency

- 10 -
OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

Order, then survey reports to the State and Federal Agencies cannot be determined accurately and additional damage and losses are at risk.

Under the California statute **California Government Code Section 3101** designates all public employees as disaster service workers. According to this law, all public employees, including those employed by counties, cities, and state agencies, are considered disaster service workers. This means they may be called upon to perform emergency duties during a disaster or state of emergency. The fiduciary duty to report to the local authorities regarding the previous fraud would have been invaluable to receiving the proper assistance and financial help during the Declared Emergency Order in December 2021 and prevented actions taken against the property. The Governor's 2021 Emergency Order was intended to provide relief to individuals impacted by severe flooding, yet Yuba County and M&T Bank failed to utilize this framework to alleviate damages caused by the disaster and previous negligence.

**FEDERAL DUE PROCESS VIOLATIONS BY YUBA COUNTY**

Yuba County has acted in violation of the 4th, 5th and 14th amendment due process, taking not an emergency or a risk to the public as it is entirely surrounded by a fence and inaccessible to the public and the timeframe for the Declared Emergency Order that affected the house passed within a few months after the storms were able to drain. The building department last inspected and was aware of the condition of the house since 3/22/19. There were no code violations until 1/11/22 during the Governor Declared Emergency Order when an infraction was issued regarding farm animals that were approved before purchase of the property. This was the only reason to purchase this property and it was intended to be a rescue for farm animals. A business based off of the farm proceeds were to care for the rescue needs. The business was established during COVID after many years of hard work and involves interstate commerce. While the Governor Declared Emergency Order was active, Yuba County officials continue to refuse and acknowledge the Emergency Order that would provide necessary help while we were facing 70-90% of the property under 6"-2 feet of

- 11 -
OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

rainfall and water runoff from the city streets improper drainage that were failed to be maintained by Yuba County Public Works. My street has had previous issues with drainage that was acknowledged by Yuba County. The infraction issued during the emergency declaration, despite knowledge of the property's condition and its non-emergency status, represents an arbitrary deprivation of property in violation of the 4th, 5th, and 14th Amendments. Yuba County's failure to report damages under the California Emergency Services Act (CESA) effectively deprived me of state and federal resources available during the declared emergency. (See attachment of road reconstruction and pictures of street drainage that is to be maintained by the County.)

**FEDERAL EMERGENCY/CIVIL CODE VIOLATIONS**

**The Animal Enterprise Terrorism Act (AETA)** was enacted in 2006, is a U.S. federal law aimed at protecting animal enterprises from acts of violence, threats, and economic damage. I have lost every business, income and animal in connection with my property. I have also witnessed their mistreatment by entities that are not knowledgeable to Federal Farming Business standards.

The Federal Code **7 U.S.C. § 1471** has been established for Farm based businesses with livestock and require Emergency Assistance to assist will transportation and feed during a Declared Emergency Order.

During the Governor Declared Emergency Order, I have faced disability discrimination according to the standards set in **42 U.S.C. § 3604** by being denied access to repair my property as someone who has been diagnosed with C-PTSD for over 20 years and needed emotional support animals in order to have independence. This statute protects individuals with disabilities under the **Fair Housing Act** can be found in **Title VIII of the Civil Rights Act of 1968**. The specific provisions under **Americans with Disabilities Act (ADA)** require FEMA and other agencies to ensure compliance in disaster preparedness, response, and recovery. This includes equitable access to emergency services and accommodations for individuals with disabilities such as my C-PTSD as well as my emotional support animals.

As plainly listed above, these damages support my claim for fraud and the failure of M&T Bank to uphold their fiduciary duty. In addition to the above, the refusal of M&T Bank to complete construction on my property as agreed under the FHA 203k loan has left the property in an unfinished and vulnerable state. By denying me equitable access to rehabilitation and repair assistance during the declared emergency, M&T Bank violated FHA protections outlined in Title VIII of the Civil Rights Act and ADA requirements for accommodations during disaster recovery. This negligence has created conditions that have subjected me and my family to harassment from developers and others seeking to exploit the situation for their own gain. Had the property been properly repaired and maintained, it would not have attracted undue attention or been targeted for redevelopment by Habitat for Humanity.

The harassment my family and I have endured, including unwanted pressure to sell the property and the stress of protecting my home, has significantly compounded the financial and emotional hardship caused by the bank's failure to uphold its fiduciary duty. These issues have disrupted my ability to resolve the disputes through good faith efforts, leaving me trapped in a cycle of injustice that the continuation of my Chapter 13 case can address.

**GOOD FAITH BASIS FOR CONTINUING CHAPTER 13**

1. Every payment has been made during the bankruptcy process and in full. Every effort to communicate has been made multiple times in good faith to resolve the issues for fraud and contract breach since 2018 with no resolution offered by M&T Bank with severe consequences that could have been avoided. All requirements have been met for the FHA 203k loan that were in my control within the contract and every effort to negotiate a modification within rights awarded by the United States Constitution and through the Supreme Court decision that equity cannot be taken from the homeowner in a modification or bankruptcy/foreclosure process.
2. During the hardship of COVID, again all efforts were made to bring the account up to date and were successfully completed. When the unexplained destruction of the property along

with all personal/business belongings were discovered to be removed; a loan modification request was then made and rejected due to misapplying federal laws to FHA requirements that were already met after 1 year.

3. While M&T Bank refuses to fulfill their fiduciary duties and file necessary paperwork on behalf of my best interests, I have tried to do the best of my ability to do their job for them and file with every possible agency to ensure I can get my property finished while being required to live in conditions that would be considered inhumane, with open walls to the elements and the dangerous possibility of trespassers walking straight into the house and showering outside in 20 degree temperatures.

4. HUD regulations allow for the extension of construction rehabilitation for every event that is delayed beyond control- this would include acts of God and natural disasters. There have been many extenuating circumstances that have led to each month an additional delay, with years being added for the Presidentially Declared Disaster during COVID. This would also extend any construction rehabilitation timelines in order to bring the house under complete conditions using the funds originally set for use.

5. I have consistently fulfilled all obligations under Chapter 13, including timely payments and proactive attempts to resolve disputes with M&T Bank. My continued adherence to these requirements underscores the merit of maintaining this case under Chapter 13.

**REQUEST FOR DISCOVERY: M&T BANK & YUBA COUNTY & CALOES & HABITAT FOR HUMANITY**

**Discovery under Rule 2004 can include depositions, document requests, and examinations of any entity related to the debtor's financial affairs.** In accordance with the discovery rule, I request for all conversations, notices, permits etc. from Yuba County departments; All M&T bank notes, phone calls etc. regarding my mortgage account along with all conversations, emails and notices between M&T Bank and Yuba County on my unauthorized behalf. Any inspections or work done by third party vendors that have been authorized by M&T Bank and/or Yuba County since the

- 14 -

OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

start of the loan in Sept. of 2018 to present; including any relevant correspondence between Smitho & Sons & James Bishop the HUD consultant. Any conversation or potential negotiations between Yuba County and Habitat for Humanity and/or M&T Bank regarding purchase and development of my property for affordable housing. All conversations between the Yuba County building department, Code Enforcement, Yuba County OES, CALOES, or Yuba County Sheriff's office including bodycam footage of January 11th, 2022 and any evacuation notices relating to my property since 2000.

Discovery under Rule 2004 is critical to uncovering evidence related to the administration of my bankruptcy case and the claims of fraud, negligence, and violations of state and federal laws by M&T Bank and Yuba County

**REQUEST FOR RELIEF**

For the foregoing reasons, I respectfully request that this Honorable Court:

1. Deny the Motion to Dismiss or Convert my Chapter 13 case;
2. Allow me to proceed with my Chapter 13 plan while the claims of fraud and contractual breaches by M&T Bank; and the unlawful taking of property by Yuba County are addressed and properly investigated;
3. Grant any further relief that the Court deems just and proper.

**CONCLUSION:**

M&T Bank's actions in withholding approved funds for construction without valid justification constitute a clear breach of the FHA 203(k) loan agreement. Additional cases similar to *Baily Tool*, such as *Gibson v. World Savings & Loan Association*, demonstrate that lenders are obligated to disburse funds in accordance with the agreed-upon terms. Furthermore, by failing to act in good faith and misapplying construction funds, M&T Bank violated the principles established in *Perdue*

- 15 -
OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE

*v. Crocker National Bank*, thereby impeding the completion of the construction project and leaving the property uninhabitable. The harmful withholding and mismanagement of these funds further align with the lender misconduct scrutinized in *Mitchell v. Federal Land Bank of St. Louis*. M&T Bank's negligence in failing to complete the agreed-upon repairs has not only breached their contractual obligations but also put the property at risk of being exploited for redevelopment purposes. Their actions—or inactions—have contributed to the vulnerability of my home and the ongoing harassment we have suffered. This lack of oversight underscores the importance of accountability and highlights the need for further scrutiny within the bankruptcy process

Given the extensive violations of federal and state laws, the negligence of M&T Bank and Yuba County, and the severe prejudice that dismissal or conversion would cause, I respectfully request this Court to deny the motion and allow my Chapter 13 case to proceed. This has already caused irreparable harm to my constitutional rights, financial status and my health of which I will never be able to recover from fully. As such, this Honorable Court should deny the Motion to Dismiss or Convert and allow the debtor to resolve these claims within the Chapter 13 process. Maintaining Chapter 13 is essential to resolving my disputes with M&T Bank. This is essential to enable me to protect my property rights and equity while pursuing legal remedies and will assist in holding M&T Bank and Yuba County accountable for their actions. I appreciate the consideration and continuing of my Chapter 13 case as my claims are investigated.

DATED: April 1, 2025

STEPHANIE ANN CHITWOOD
In Pro Per

OPPOSITION TO MOTION TO DISMSS OR CONVERT CHAPTER 13 CASE